814 P.2d 463

**Bobby D. PATRICK, and Fern Patrick, Plaintiffs–Appellants,**

v.

**Tommy RICE, Vicki Lynn Rice, John Childress, and Connie Diane Childress, Defendants–Appellees.**

**No. 11220.**

Court of Appeals of New Mexico.

May 23, 1991.

Certiorari Denied June 26, 1991.

John F. McCarthy, Jr., Sumner S. Koch, Ann M. Harvey, White, Koch, Kelly, & McCarthy, P.A., Santa Fe, for plaintiffs-appellants.

Charles D. Alsup, Law Office, Clayton, for defendants-appellees.

## OPINION

CHAVEZ, Judge.

This is a quiet title action the plaintiffs undertake pursuant to NMSA 1978, Section 7–38–70(D) (Repl.Pamp.1986). Plaintiffs claim that whether or not the state taxation and revenue division (division) complied with the notice statute, NMSA 1978, Section 7–38–66 (Repl.Pamp.1986), regarding the impending sale of their property for delinquent taxes, they were denied due process of law because the attempts to notify them were constitutionally inadequate. Additionally, plaintiffs claim that the division denied them their due process rights because the tax sale price of the property was too low. We reverse on the due process notice question, and do not reach the tax sale price question.

### FACTS

Plaintiffs purchased the property, an unimproved lot in Taos County, in 1971. They began building a vacation cabin that same year, and each year after that they made more improvements on the property. The cost of the improvements for each year was less than $1,000 except in 1980, when the plaintiffs drilled a well at a cost of approximately $2,500. The cumulative value of these improvements, the trial court found, "greatly exceeded" $1,000. The plaintiffs did not pay property taxes on the property for the tax years 1982 through 1985.

Many reasons contributed to this nonpayment of taxes. The plaintiffs are partly to blame. First, they never reported to the county tax assessor any of the improvements they were making on the property, nor did they seek and obtain construction permits for the improvements. Plaintiffs relied on advice, perhaps unreasonably so, that they did not have to report improvements to the property until the improvements were 80% complete. Second, according to the trial court's findings, there was no credible evidence that the plaintiffs notified Taos County of their move from a street address to a rural route address in Amarillo, Texas. It was evident to plaintiffs that the county did not have the correct address when, in 1981, they received the 1980 assessment forwarded from their old address. Third, and perhaps most telling, is the fact that plaintiffs had been regularly paying property taxes from 1972 through 1981, and did nothing about the interruption of that regular routine for the years 1981 through 1986.

The taxing authorities are partly to blame as well. First, there is documentary evidence that, in 1985, the county knew of the improvements on the subject property, including the fact that the cabin was receiving electricity. *See Maestas v. Martinez,* 107 N.M. 91, 752 P.2d 1107 (Ct.App.1988) (appellate court can determine facts and draw own conclusions of law when issue rests upon a determination of documentary evidence). Yet on August 13, 1986, the field inspector visiting the area did not make a physical inspection of the exact property and thus failed to notice the improvements. He noted that the lot remained unimproved. If he would have found the improvements, it is likely he would have indicated such finding in the records. In turn, the division could have used the information that the cabin was receiving electricity to check the address the local electric utility had for billing plaintiffs. There is only one electric utility serving the area. Second, when plaintiffs paid their taxes in 1981, they used a personal check that noted their correct address and phone number. The county did not recognize the address change, but apparently this is the way plaintiffs successfully notified the county of an address change in the mid–1970's. Third, the field inspectors in the area had a policy by which they were to post notice of delinquent taxes on the land if it had improvements. Because the field inspector did not find the particular parcel on August 13, 1986, he did not post notice of delinquent taxes on plaintiffs' property. Plaintiffs had friends stay at the cabin on August 15 through 18, 1986, and these people might have noticed a tax delinquency tag. Finally, on October 15 and 21, 1986, the division received back as undeliverable two notices of the sale that the division sent by certified mail to two of plaintiffs' former addresses. On October

28, 1986, plaintiffs' correct address was in the division's computer files as owners of a contracting company. There is no evidence that the division checked this data bank. Yet the division held an auction at which defendants purchased the property on October 30, 1986.

COMPLIANCE WITH STATUTE

Section 7–38–66(A) requires the division to send notice to delinquent taxpayers via certified mail, return receipt requested. This requirement implicitly requires the division to send the notice to the correct address. The division has an affirmative duty to seek out, by "diligent search and inquiry," the correct address of each property owner. NMSA 1978, § 7–38–82(A) (Repl.Pamp.1986). The division must also publish notice of an impending tax sale. NMSA 1978, § 7–38–67(B) (Repl.Pamp.1986). At the time of the sale, if the return receipt showed that the property taxpayer did not live at the address shown, then the notice was adequate. § 7–38–66(C).

The parties and the court focused much of their inquiry on whether plaintiffs gave their new address to Taos County. There is no affirmative requirement that a property taxpayer give that notice. The 1986 version of Section 7–38–66(C) merely provides a factual threshold for the soundness of mail notice, i.e., the return of the receipt marked undeliverable. If there is substantial evidence that the receipts were returned undeliverable, then the statute requires us to find that the division's mail notice was adequate. See § 7–38–66(C).

As we stated, the division mailed two notices of the tax sale to two of plaintiffs' former addresses. Both of those notices were by certified mail, return receipt requested. Defendants' exhibits A and B, the envelopes within which the division sent the notices, display marks the postal service apparently made. These marks state that the postal service was "unable to forward" the mail. A reasonable inference from these marks is that the taxpayer does not reside at the address. See Wine v. Neal, 100 N.M. 431, 671 P.2d 1142 (1983); § 7–38–66(C). The trial court was within

its province to make this inference, and to not believe the testimony that plaintiffs sent a notice of their address change. See Tapia v. Panhandle Steel Erectors Co., 78 N.M. 86, 428 P.2d 625 (1967) (the trial court determines the credibility of witnesses and where the truth lies).

There was substantial evidence that the notice satisfied the statutory requirements of Section 7–38–66(A). A different question arises as to whether the division's search for plaintiffs, pursuant to Section 7–38–82(A), satisfied the requirements of due process. The fact that the division sent two notices gives rise to the reasonable inference that the division sought assistance from the postal service in locating plaintiffs. That is, the division sent the notices hoping the postal service would deliver them as addressed or forward them successfully, thereby finding plaintiffs. The fault-finding the parties undertake is simply a discussion of the conflicting evidence on the reasonableness of the division's diligence. These conflicts were for the trial court to sort out. See Toltec Int'l, Inc. v. Village of Ruidoso, 95 N.M. 82, 619 P.2d 186 (1980). There was substantial evidence that the division searched for plaintiffs with reasonable diligence. See § 7–38–82(A); contra Bryant v. T.C.B. Enterprises, 395 So.2d 823 (La.Ct.App.1981) (improper to end search after return of undelivered mail notice).

DUE PROCESS

Determining that the division complied with applicable notice statutes resolves only half the question on appeal. When the division holds a tax sale, that is a taking of property by the government, the notice of such taking must comply with minimum due process standards under the United States and New Mexico Constitutions. Chavez v. Sharvelle, 106 N.M. 793, 750 P.2d 1119 (Ct.App.1988); see also Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

Defendants maintain that the division's efforts at locating plaintiffs met constitutional as well as statutory requirements.

There is no analysis in defendants' arguments that differentiates statutory and constitutional thresholds. However, the due process analysis we must employ necessarily requires the perspective that a forced tax sale is a matter of grave importance to a state's taxing authority. *See Fulton v. Cornelius*, 107 N.M. 362, 758 P.2d 312 (Ct.App.1988). When seeking to give notice to delinquent taxpayers, the division may find the need to go beyond bare compliance with statutory requirements to meet constitutional standards. Describing what notice method would be appropriate, the United States Supreme Court stated the means employed must be " 'such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it.' " *Mennonite Bd. of Missions v. Adams*, 462 U.S. at 799, 103 S.Ct. at 2711 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 657–58, 94 L.Ed. 865 (1950)).

The facts of this case give rise to an opportunity for us to make the distinction between sufficient statutory and constitutional notice which defendants do not make in their answer brief. We find this distinction in the following cases. In *Fulton v. Cornelius*, the existence of the property taxpayer's name in the division's estate tax files made the taxpayer's location reasonably ascertainable, so publication notice inadequate. In *Macaron v. Associates Capital Servs. Corp.*, 105 N.M. 380, 733 P.2d 11 (Ct.App.1987), the existence of a mortgagee's name in the county clerk's mortgage recording files made the mortgagee's identity reasonably ascertainable, rendering publication notice inadequate. This is consistent with the United States Supreme Court's analysis. In *Mennonite Bd. of Missions v. Adams*, 462 U.S. at 798 n. 4, 103 S.Ct. at 2711 n. 4, the Court reasoned that because mail notice to the general delivery of a small town could reach the party whose property the taxing authority took, the diligence exercised by the taxing authority was constitutionally unreasonable. *Accord Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (property owner's name and ad-

dress in deed records and tax rolls was readily ascertainable).

We read these cases to state that, even assuming compliance with statutory notice requirements, the due process question is whether reasonable diligence would have led to the discovery of existing information. The constitutional test is not the same as the statutory test, and goes beyond merely asking whether the language of the statute was followed, to asking whether the search the division undertook was reasonably diligent. The question is whether the identity and location of a party entitled to notice was "reasonably ascertainable." *Brown v. Greig*, 106 N.M. 202, 206, 740 P.2d 1186, 1190 (Ct.App.1987).

If the question of the ascertainability of plaintiffs' current address were a question of fact, we would sustain the trial court's judgment pursuant to the substantial evidence principles of *Tapia v. Panhandle Steel Erectors Co.* The circumstances surrounding the ascertainability of the address, such as the existence of electricity service to the cabin or whether plaintiffs gave their change of address to the county, are questions of fact. However, our supreme court has repeatedly held the adequacy of notice to be a question of law. *See Valley Fed. Sav. Bank v. Stahl*, 110 N.M. 169, 793 P.2d 851 (1990) (adequacy of notice from description of collateral in financing statement); *City of Albuquerque v. State*, 102 N.M. 38, 690 P.2d 1032 (1984) (adequacy of notice from a ballot measure title). In the context of tax sales, the United States Supreme Court held in a case arising from the territorial courts of New Mexico that pleading the inadequacy of publication notice was pleading a conclusion of law. *Straus v. Foxworth*, 231 U.S. 162, 168, 34 S.Ct. 42, 43, 58 L.Ed. 168 (1913). Similarly, in *Macaron*, we did not discuss substantial evidence principles in reversing the trial court judgment, and ruling that a mortgagee's recorded interest in the county recorder's office was reasonably ascertainable. *Accord State ex rel. Klineline v. Blackhurst*, 106 N.M. 732, 749 P.2d 1111 (1988). This absence of a substantial evidence discussion indicates that the

analysis of the "reasonably ascertainable" issue is a question of law.

█ These cases persuade us that the courts have premised their reasoning on the principle that the adequacy of notice is a static threshold based in law, to be consistently applied to each differing circumstance. The ascertainability of a property taxpayer's identity and address is a threshold beyond which due process principles require action from the division in every case. *See Brown v. Greig.* In that sense, the issue of reasonable ascertainability is similar to the issue of adequacy of notice. We thus hold that the question of whether plaintiffs' new address was reasonably ascertainable is a question of law. We adhere to the trial court's findings supported by substantial evidence, but make our independent conclusion of reasonable ascertainability from those findings. *See Texas Nat'l Theaters, Inc. v. City of Albuquerque,* 97 N.M. 282, 639 P.2d 569 (1982).

█ In this case, the division had the correct address in its files under plaintiffs' surname with plaintiff Bobby Patrick's full name and address. This is the sort of ascertainable information that gave rise to the need for more than publication notice in *Fulton v. Cornelius,* though here the information was available to the division just two days before the sale. In addition, there was the check plaintiffs wrote to Taos County in 1981 bearing plaintiffs' correct address and phone number. There was also the information the electric utility possessed and to which a more thorough field inspection could have led. Finally, if the division would have tagged the property, there was a reasonable likelihood that visitors or neighbors would have noticed the tag and reported the same to plaintiffs. *But cf. Worman v. Echo Ridge Homes*

*Coop.,* 98 N.M. 237, 647 P.2d 870 (1982) (tagging property, on its own, is not a requirement of law in light of other, actual notice to interested party).

█ We need not decide if any of the individual sources of information containing plaintiffs' current address made it reasonably ascertainable. Overall, there were too many ways the division could have ascertained plaintiffs' current address for us to say that it was not reasonably ascertainable. We recognize plaintiffs' part in creating the situation at hand. Yet even if a party could have done more to assure itself notice, the law still affords that party due process. *Mennonite Bd. of Missions v. Adams,* 462 U.S. at 800, 103 S.Ct. at 2712. There are other ways of dealing with delinquent property taxpayers than to deny them the right to due process. *See, e.g.,* NMSA 1978, §§ 7–38–8(H), –50, and –92 (Repl.Pamp.1986). Accordingly, we hold that the notice of sale was constitutionally inadequate. *See Mennonite Bd. of Missions v. Adams; Fulton v. Cornelius.*

## CONCLUSION

We reverse and remand "with instructions to void the tax sale." *Macaron v. Associates Capital Servs. Corp.,* 105 N.M. at 383, 733 P.2d at 14.

IT IS SO ORDERED.

ALARID, C.J., and APODACA, J., concur.