**Linda PLEMONS aka Linda Plemons Buechler, Plaintiff,**

v.

**Douglas Q. GALE, et al., Defendants.**

No. CIV.A. 2:03–0418.

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 13, 2004.

James T. Cooper, Cooper & Glass, Charleston, WV, for Plaintiff Linda Plemons.

Edward P. Tiffey, Charleston, WV, for Defendants Douglas Q. Gale and Advantage 99 TD.

## OPINION AND ORDER

GOODWIN, District Judge.

Pending before the court is the plaintiff's Motion for Summary Judgment [Docket 13]. The plaintiff originally petitioned the Circuit Court of Kanawha County, West Virginia to set aside a deed to her property that the defendants obtained through West Virginia's tax sale procedure. The defendants timely removed the action to this court which has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

For the court to set aside the defendants' tax sale deed, the plaintiff must prove that the defendants failed to provide her with adequate notice of their intent to acquire the deed to the property. The procedure for giving notice set forth in the West Virginia Code requires, at bare minimum, that the notice given comport with due process. The court **FINDS** that the defendants failed to give the plaintiff constitutionally adequate notice of her right to redeem the subject property, and the plaintiff, therefore, has the right to set aside the deed to the subject property.

The court **GRANTS** the plaintiff's Motion for Summary Judgment [Docket 13].

## I FACTS

The following facts are undisputed. The plaintiff, Linda Plemons, and her business partner, Jerry Lipscomb, purchased the subject property[1] from Beverly Allen on August 9, 1999. Ms. Plemons refinanced the property through Capital State Bank on February 17, 2000. After this refinancing, Ms. Plemons believed that the bank was paying the real estate taxes on the property through an escrow account. Ms. Plemons was mistaken, and neither she nor the bank has paid real estate taxes on the subject property since the refinancing. On November 13, 2000, the Sheriff of Kanawha County sold a tax lien on the subject property to the defendant, Advantage 99 TD (Advantage), at the Sheriff's annual tax sale of delinquent property.

After acquiring the tax lien, Advantage conducted a title examination that revealed the identities of parties having an interest in the subject property. Advantage then tendered a report to the clerk of the County Commission of Kanawha County, West Virginia identifying those parties to be notified and requesting that the clerk prepare and serve notice to redeem on those parties. The report prepared by Advantage named both the plaintiff, Linda Plemons Buechler,[2] and her business partner, Jerry Lipscomb, among others, as persons entitled to notice. The following three addresses were given for Ms. Plemons: (1)

913 Echo Road, South Charleston, West Virginia 25303 (the address of the subject property as identified in the relevant deeds), (2) 917 Echo Road, South Charleston, West Virginia 25303 (the mailing address of the subject property), and (3) 928 Garden Street, Charleston, WV 25303 (the address of another rental property owned by Ms. Plemons). The report also called for notices to be sent to Jerry Lipscomb and "Occupant" at both of the Echo Road addresses.

On January 16, 2002, the clerk issued a notice to redeem to the listed parties. The notice stated that the tax lien on the subject property had been sold to Advantage, and that a deed would be issued to Advantage unless a party redeemed the property. The notices were sent to the parties at the addresses listed in Advantage's report by certified mail return receipt requested. Ms. Plemons resided at the subject property from August 1999 to May 2001, and from July 2001 to June 2003, she rented the subject property to tenants, Debbie and Ryan Jenkins. At the time the clerk mailed the notice to redeem in January 2002, Ms. Plemons lived at 405 Quarry Point in Charleston, West Virginia. Jerry Lipscomb never resided at the subject property. None of the notices were addressed to the Jenkinses.

All notices sent to 913 Echo Road were returned by the post office stamped "No Such Number." The notices sent to Ms. Plemons and Jerry Lipscomb at 917 Echo Road were returned by the post office

---

1. The subject property is designated on Certificate of Sale No. 00–S–1700, as Tax Map 36, Parcel 95 and further described as Lot 89 section 2 Thousand Oaks Addition, Echo Road 913.

2. The plaintiff filed this action as Linda Plemons, however, during the relevant time period she used her married name, Linda Plemons Buechler. Advantage properly identified the plaintiff as "Linda Plemons Buechler" in the

report it submitted to the clerk. The clerk did, however, consistently misspell the plaintiff's last name. Rather than addressing the notices to "Linda Plemons Buechler," the clerk addressed the plaintiff's notices to "Linda Plemons Buechier." It is undisputed that neither the plaintiff's change of name nor the clerk's error affected the defendants' ability to contact her.

stamped "Not Deliverable as Addressed Unable to Forward." Debbie and Ryan Jenkins did not receive or claim the notices sent to Occupant at 917 Echo Road, and the notices sent to Occupant were eventually returned by the post office. The notice sent to Ms. Plemons at 928 Garden Street was returned stamped as unclaimed and refused. None of the notices sent to Ms. Plemons, Jerry Lipscomb, or the occupants of the subject property resulted in a signed acknowledgment of receipt, and all of these notices were eventually returned unclaimed.

After the notices were returned to the clerk, Advantage published the notice to redeem in the Charleston Gazette and the Charleston Daily Mail on April 12, 2002 and April 26, 2002. When no party redeemed the subject property by the close of the redemption period, the clerk issued a deed to Advantage and Advantage recorded the deed. On November 22, 2002, Advantage conveyed the subject property to defendant Douglas Q. Gale by a quitclaim deed which he has since recorded. With regard to the subject property, Gale is the successor in interest of Advantage, and as such, he will be held responsible for the actions or omissions of Advantage pertaining to this motion. *See* § 11A–4–4(a).

Ms. Plemons stated in an affidavit that she did not see the published notice to redeem, and she was not made aware of the published notice by any other party. Further, Ms. Plemons stated that she first learned the subject property had been sold for taxes in January 2003. Throughout the notice period, Ms. Plemons was listed in the Kanawha–Putnam telephone directory under "Linda and Michael Buechler." In addition, the Jenkinses knew the whereabouts of Ms. Plemons. Ms. Plemons has continued to make the regularly scheduled mortgage payments to Capital State Bank.

## II DISCUSSION

Preliminarily, the court notes that Ms. Plemons filed this motion prior to the completion of discovery and the defendants' response argues that more time is needed to develop the facts in this case. Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment 2–4. The relevant facts in this case pertain to the efforts made by the defendants to provide Ms. Plemons with notice, and therefore, even in the absence of discovery, the defendants' had knowledge of the relevant facts. Further, after Ms. Plemons moved for summary judgment and the defendants responded, the court asked both parties to brief the issue of due process. In so doing, the court provided the defendants with a second opportunity to inform the court of the efforts made to provide notice. As requested, the defendants submitted a brief to the court on the issue of due process, which included attachments evidencing their efforts to provide notice. Finally, the defendants have submitted their own motion for summary judgment to the court. The defendants have had control of the relevant facts since this case was filed, and the defendants have had three opportunities to inform the court of the facts. The court rejects the defendants' contention that Ms. Plemons' motion is untimely.

To obtain summary judgment, the plaintiff must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In deciding Ms. Plemons' motion for summary judgment, the sole issue before the court is whether the defendants provided Ms. Plemons with adequate notice of her right to redeem the subject property. The opinion below addresses this issue in three parts. First, the court reviews West Virginia's statutory scheme for tax sales.

Second, the court discusses the requirements of the due process clause of the United States Constitution. Third, the court applies the notice requirements of due process to the situation in which a mailed notice is returned unclaimed.

## A. West Virginia's Statutory Scheme for Tax Sales

In West Virginia, every landowner has a duty to pay taxes on her property. To facilitate the administration of property taxes, the legislature has enacted laws governing the accrual, collection, and enforcement of property taxes. W. Va.Code § 11A (2002). Under West Virginia's statutory scheme, the state holds a lien on all real property for the taxes assessed thereon, and this lien attaches every year on the first of July. *Id.* at § 11A–1–2. If a property owner fails to pay her taxes, the state has several statutory enforcement mechanisms. The state may collect the amount of delinquency by bringing suit against the taxpayer, by distraint of the taxpayer's personal property, by collection from a third party who is indebted to or possesses property of the taxpayer, or by selling the state's tax lien to a third party. *Id.* at §§ 11A–2–2; 11A–2–3; 11A–2–7; 11A–2–10. West Virginia chose to collect Ms. Plemons' delinquent taxes by selling its tax lien to Advantage.

Articles 3 and 4 of West Virginia Code Chapter 11A govern the sale of tax liens and remedies related to tax sales. *Id.* at §§ 11A–3; 11A–4. A tax sale occurs in two stages. First, the state sells its tax lien,[3] and second, the state issues the tax lien purchaser a deed to the property. *Id.* at §§ 11A–3–5; 11A–3–27. The issuance of the tax sale deed extinguishes the original owner's right to redeem. *Id.* at § 11A–3–23. In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court held that in the tax sale context, due process requires states to provide notice by mail or its equivalent to persons who hold an interest in the property and who are reasonably ascertainable. 462 U.S. at 798–99, 103 S.Ct. 2706. On July 1, 1994, the West Virginia Legislature re-enacted amended versions of Articles 3 and 4 for the purpose of bringing the state's notice provisions into compliance with *Mennonite*. *See* Robert L. Shuman, *The Amended and Reenacted Delinquent and Nonentered Land Statutes–The Title Examination Ramifications*, 98 W. Va. L.Rev. 537, 540 (1996).

The amended versions of Articles 3 and 4 place the burden of providing constitutionally adequate notice on the tax lien purchaser.[4] To start, § 11A–3–19 states

3. Prior to the sale of the tax lien, the Sheriff is required to provide notice of delinquency by publishing a list of all delinquent property and by sending notice of delinquency via certified mail to persons having an interest in the property. The notice prescribed by § 11A–3–2 is intended to inform the interested parties of the delinquency and of the parties' right to redeem the property prior to the sale of the tax lien. Further, the notice states that, unless the property is redeemed, the tax lien will be sold at a public auction. *Id.* at § 11A–3–2.

4. In the context of a due process inquiry, this focus on the tax lien purchaser, as opposed to the state, raises a state action issue. Due pro-

cess protections only apply to deprivations of property rights that occur through state action, and states, as opposed to private parties, are typically held responsible for satisfying the requirements of due process. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). State action may, however, be found "when private parties make use of state procedures with the overt, significant assistance of state officials." *Id.* at 486, 108 S.Ct. 1340. A tax sale of property constitutes state action because the state sells the tax lien in the first instance, the state provides the tax lien purchaser with the procedural mechanisms to extinguish the owner's rights, and a state offi-

that a purchaser must "[p]repare a list of those to be served with notice to redeem and request the clerk to prepare and serve the notice ...." The form list submitted by purchasers to the clerk for the purpose of complying with § 11A–3–19 requires purchasers to provide the addresses of the persons on the list. Thus, tax lien purchasers are responsible for identifying and locating parties holding an interest in the property and for ensuring that the clerk mails proper notice to those parties. *See* W. Va.Code at § 11A–3–19. Section 11A–3–22 elaborates on the duties of the tax lien purchaser by stating that, "[i]f the address of any person entitled to notice ... is unknown to the purchaser and cannot be discovered by due diligence[5] on the part of the purchaser, the notice shall be served by publication ...." This latter section makes clear that tax lien purchasers must exercise due diligence in identifying and locating parties entitled to notice and that constructive notice is only permissible following the exercise of due diligence. *Id.* at § 11A–3–22.

In the present case, both stages of the tax sale process are complete. West Virginia sold its tax lien on Ms. Plemons' property to Advantage, and the clerk subsequently issued a tax sale deed to Advantage. Ms. Plemons now seeks to have the tax sale deed set aside pursuant to § 11A–4–4 of the West Virginia Code. Section 11A–4–4(a) permits a party entitled to no-

tice to bring an action to set aside a tax sale deed if she was not served with notice as statutorily required and if she did not have actual knowledge that such notice was given to others in time to protect her interests. It is undisputed that Ms. Plemons had a right to receive notice to redeem and that Ms. Plemons did not acquire actual knowledge that such notice was sent until after the conclusion of the redemption period. Thus, § 11A–4–4(a) permits Ms. Plemons to bring this action.

In order to prevail, Ms. Plemons must satisfy the substantive standard for setting aside a tax sale deed set forth in § 11A–4–4(b). Section 11A–4–4(b) requires a plaintiff to prove "by clear and convincing evidence that [the tax lien purchaser] failed to exercise reasonably diligent efforts to provide notice" to the plaintiff of its intention to acquire the tax sale deed. *Id.* at § 11A–4–4(b). Section 11A–4–4(b) was added to the West Virginia Code as part of the 1994 amendments intended to bring West Virginia's notice requirements into line with the due process requirements of the United States Constitution articulated in *Mennonite*, and that statutory section echos key language from *Mennonite*.[6] *Mennonite*, 462 U.S. at 798, 103 S.Ct. 2706; Shuman, *supra*, 540. Therefore, the court **FINDS** that § 11A–4–4(b) allows a plaintiff to set aside a tax sale deed when she proves by clear and convincing evidence that the tax lien purchaser failed to

cial ultimately issues the tax lien purchaser the deed to the property. By shifting the burden of ensuring adequate notice to tax lien purchasers, who are typically private parties, West Virginia has not circumvented the requirement of constitutionally adequate notice. Instead, under West Virginia's statutory scheme, the adequacy of notice must be measured according to the actions of the tax lien purchaser, and in providing notice, tax lien purchasers are held to the same due process requirements as the state.

5. In this context, the term "due diligence" is equivalent to the term "reasonable diligence."

6. Section 11A–4–4(b) requires a former owner seeking to set aside a tax deed to prove that the tax lien purchaser "failed to exercise reasonably diligent efforts to provide notice...." Comparatively, in *Mennonite*, the court held that the State must exercise "reasonably diligent efforts" to determine the address of persons entitled to notice. 462 U.S. at 798 n. 4, 103 S.Ct. 2706.

give constitutionally adequate notice. In so finding, the court expresses no opinion as to the propriety of either placing the burden of proof on the plaintiff or requiring that the plaintiff prove failure to give constitutionally adequate notice by clear and convincing evidence. Resolution of these burden of proof issues would require the court to address "questions of a constitutional nature" which are not "necessary to a decision of the case." *See Burton v. United States,* 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905). *See also United States v. Kaluna,* 192 F.3d 1188, 1197 (1999) (finding that a court should not decide whether a statute's use of the clear and convincing standard violates the due process clause unless necessary to the decision in the case). As is discussed in detail below, Ms. Plemons has proven by clear and convincing evidence that the defendants' attempt to provide her with notice fails to satisfy the requirements of due process. *See Mennonite,* 462 U.S. at 791, 103 S.Ct. 2706; *Mullane,* 339 U.S. at 314, 70 S.Ct. 652.

## B. Requirements of Due Process

■■ The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A tax sale deprives an owner of her property, and therefore, when a state chooses to conduct a tax sale, the Fourteenth Amendment requires the state to provide the owner with due process of law. *See Mennonite,* 462 U.S. at 798, 103 S.Ct. 2706. The fundamental requirements of procedural due process are notice and an opportunity to be heard. *See Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). These constitutional

requirements apply to all tax sales and exist independent of any state statute. Further, it is a basic principal of jurisprudence that the "federal judiciary is supreme in the exposition of the law of the Constitution ...." *Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). Therefore, even though West Virginia's statutory scheme uses the due process standard as a baseline for determining whether a plaintiff is entitled to set aside a deed, in interpreting the due process standard, the court is neither bound by West Virginia law nor limited in its decision by federalism concerns.

■ Due process clearly requires property owners to be given notice of a tax sale, however, West Virginia's two-stage tax sale process raises a threshold question as to when notice is required. *See Acirema, N.V. v. Lilly,* No. CIV. A. 1:96–0559, 1997 WL 876738 at \*4 (S.D.W.Va. Aug.11, 1997) (suggesting that a property owner is deprived of property once the redemption period has expired and the sale to the tax lien purchaser is final). Here, Ms. Plemons alleges that she did not receive adequate notice prior to the issuance of the tax sale deed, and accordingly, the court need not consider due process as it pertains to the sale of the tax lien. Under *Mennonite,* process is due whenever the state deprives a person of a substantial property interest. *See* 462 U.S. at 798, 103 S.Ct. 2706. When the clerk issues the deed to the tax lien purchaser, the original owner loses substantial property rights—both the title to the property and the right to redeem the property. W. Va.Code § 11A–3–27. The court **CONCLUDES** that due process requires property owners to be given adequate notice prior to the issuance of the tax sale deed.[7]

---

7. Notice of the pending tax *lien* sale is not adequate notice of the intent to issue a tax

sale deed and extinguish the owner's right to redeem. *Compare Mennonite,* 462 U.S. at

The next step is to define what constitutes adequate notice in this context. The United States Supreme Court has provided substantial guidance on this point in two separate opinions, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Mullane*, the Court found that when a state threatens to deprive a person of property, the adequacy of a particular form of notice is determined by balancing the interests of the state against the individual interests protected by the Fourteenth Amendment. 339 U.S. at 314–15, 70 S.Ct. 652. The Court expressly stated that it did not commit itself to "any formula [for] achieving a balance between these interests in a particular proceeding or determining when constructive notice may be utilized ...." *Id.* at 314, 70 S.Ct. 652. Nevertheless, the Court took notice of the fundamental principle that, prior to any action affecting an interest in life, liberty, or property protected by the due process clause, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* Applying this principle, the Court held that publication notice of an action to settle accounts of a common trust fund was insufficient process as to beneficiaries whose names and addresses were known. *Id.* at 318–19, 70 S.Ct. 652.

The Court reasoned that "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it" and that when the circumstances are such that a person's name and address are known, notice by publication is not reasonably calculated to give the person actual notice because it is far less likely than notice by mail to inform the person of the pendency of the action. *Id.* at 315, 70 S.Ct. 652.

Thirty-three years later in *Mennonite*, the Court addressed the issue of whether publication and posting provided interested parties with adequate notice of a pending tax sale. Applying *Mullane*, the Court held that constructive notice was not reasonably calculated to inform identifiable parties, and that "[n]otice by mail or other means as certain to ensure actual notice is *a minimum constitutional precondition* to a proceeding which will adversely affect the liberty or property interests of *any* party ... if its name and address are reasonably ascertainable." *Id.* at 800, 103 S.Ct. 2706 (emphasis added). The Court further explained that mailing notice is required when a party's address can be "ascertained through reasonably diligent efforts," but that "extraordinary efforts" are not required. *Id.* at 798 n. 4, 103 S.Ct. 2706.

■■■ The due process standard articulated in *Mullane* and *Mennonite* focuses the due process inquiry on the actions taken by the party responsible for giving

800, 103 S.Ct. 2706 (holding that knowledge of tax delinquency is not equivalent to notice of a pending tax sale); *In re Foreclosure of Liens for Delinquent Taxes*, 79 Ohio App.3d 766, 607 N.E.2d 1160, 1163 (1992) (holding that knowledge of future tax sale is not equivalent to notice of time and place of sale and does not satisfy requirements of due process). The notice of a tax lien sale proscribed by § 11A–3–2 fails to inform interested parties of their right to redeem the property after the sale of the tax lien. W. Va.Code at §§ 11A–3–2; 11A–3–27. In addition, this notice does not give the date on which the clerk will issue the tax sale deed, if the property is not redeemed. *Id.* Regardless, Ms. Plemons stated in an affidavit that she did not receive notice of the tax sale until January 2003, suggesting that she did not receive notice of the tax lien sale from the Sheriff, and the defendants have made no arguments to the contrary.

notice. That party must make a reasonably diligent effort to ascertain those entitled to notice and must take steps reasonably calculated to provide actual notice. *See Mennonite,* 462 U.S. at 798, 103 S.Ct. 2706. Notice so given is constitutionally sufficient regardless of whether the notice is actually received. *See Mullane,* 339 U.S. at 319, 70 S.Ct. 652.

Under West Virginia law, the tax lien purchaser has the duty to give notice and a countervailing interest in profiting from a property owner's failure to redeem. That is, a tax lien purchaser is unlikely to want a property owner to receive actual notice of her right to redeem as he hopes to make money on his purchase. This circumstance makes it imperative that courts strictly scrutinize efforts of a tax lien purchaser to ensure that they are "such as one desirous of actually informing the absentee" might reasonably adopt. *Mullane,* 339 U.S. at 315, 70 S.Ct. 652.

## C. Reasonably Diligent Efforts in the Context of Unclaimed Mail

In the present case, Advantage properly identified Ms. Plemons as an interested party entitled to notice to redeem. Advantage requested that the clerk mail her notice to redeem to three separate addresses, including the mailing address of the subject property, the address for the subject property listed on the deed, and the address of a rental property owned by Ms. Plemons. The notices sent to Ms. Plemons were returned unclaimed by the post office and she failed to return any of the signed acknowledgments of receipt. Thereafter, Advantage published notice. These facts raise the question of what process is required when mailing notice is returned unclaimed.

Courts across the country faced with similar issues have found that, when notice sent by certified mail is returned un-claimed, the reasonable diligence standard requires the party charged with notice to make further inquiry to ascertain the intended recipient's proper address. *Schmidt v. Langel,* 874 P.2d 447, 450 (Colo.App.1993) (holding that when notice has been returned, reasonable diligence requires county treasurer to re-examine county records to check address for accuracy and look for alternative addresses); *Elizondo v. Read,* 588 N.E.2d 501, 504 (Ind.1992) (holding that when notice has been returned, due process requires auditor to search records in his own office for other possible addresses); *Kessen v. Graft,* 694 N.E.2d 317, 320 (Ind.Ct.App.1998) (holding that when notice is returned from owner's second home, due process requires further inquiry); *City of Boston v. James,* 26 Mass.App.Ct. 625, 530 N.E.2d 1254, 1256 (1988) (holding that when notice is returned, due process requires city to consult public records or make other simple inquiries); *Patrick v. Rice,* 112 N.M. 285, 814 P.2d 463, 468 (N.M.App.1991) (holding that returned notice sent by state's revenue division was inadequate when division had the correct address in its files on check to county); *In re Tax Claim Bureau of Beaver County Tax Sale Sept. 10, 1990,* 143 Pa.Cmwlth. 659, 600 A.2d 650, 654 (1991) (holding that tax claim bureau did not make reasonable effort to locate party when notice was returned, party's address was available in the domestic relations records, and bureau had letters from party's divorce attorney); *Benton v. Logan,* 323 S.C. 338, 474 S.E.2d 446, 448 (S.C.App. 1996) (holding that due process requires further inquiry when notice is returned); *Toyota Motor Credit Corp. v. Tenn. Dept. of Safety,* No. M2003–00147–COA–R3–CV, 2003 WL 22519810 *10–12 (Tenn.Ct.App. Nov.7, 2003) (holding that when the state knows that an address is no longer valid, due process requires further inquiry to obtain a current address). *But see Dahn*

*v. Trownsell,* 576 N.W.2d 535, 542 (S.D. 1998) (holding that due process requirements do not impose a duty to search for an alternative address).

 Simply put, the requirements of due process are not satisfied by the mere act of mailing notice to *any* address. *See Wells Fargo Credit Corp. v. Ziegler,* 780 P.2d 703, 705 (Okla.1989). Due process requires that a reasonably diligent effort be made to mail the notice to the intended recipient's *correct* mailing address. *See Mennonite,* 462 U.S. at 798, 103 S.Ct. 2706; *Benton,* 323 S.C. at 341, 474 S.E.2d at 447. When notice is sent via certified mail and returned unclaimed, the sender has positive knowledge that he sent the notice to the wrong address and that the mailing failed to convey actual notice to the intended recipient. If a reasonably diligent party wanted to provide actual notice and learned that notice sent by mail was returned unclaimed, the party's next logical step would *not* be to publish a relatively small announcement in the newspaper. Rather, a reasonably diligent party would make further inquiry in hopes of finding the intended recipient's correct address. *See O'Brien v. Port Lawrence Title & Trust Co.,* 87 Ohio Misc.2d 10, 688 N.E.2d 1136 (Ohio Com.Pl1997); *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 296, 489 A.2d 1334 (Pa.1985). Requiring a party to make further inquiry is particularly important when the one charged with the duty to give notice would benefit from the failure of the intended recipient to receive actual notice. Therefore, the court **FINDS** that when notice sent by certified mail is returned unclaimed, the reasonable diligence standard requires the party charged with giving notice to undertake further inquiry reasonably calculated to ascertain the intended recipient's correct mailing address.

If the party charged with notice is a state office, the office may be required to check any records it has pertaining to the subject property or the intended recipient for the correct address. *See Patrick,* 814 P.2d at 468. If the intended recipient is a large corporation, inquiry to the secretary of state would likely be one of many ways in which a party could satisfy its obligation of further inquiry. *See Toyota Motor Credit Corp.* 2003 WL 22519810 at *3–4. If the last known address is an address other than the subject property and service on this address fails, a party giving notice could make further inquiry at the subject property or with neighbors adjacent to the subject property. *See Kessen,* 694 N.E.2d at 320. If notice mailed to one person fails, further inquiry could be made with others holding an interest in the property, such as mortgagees. *Lilly v. Duke,* 180 W.Va. 228, 376 S.E.2d 122, 126 (1988). Where, as here, the intended recipient is a private person, further inquiry could be made by calling the telephone number listed for the private person in the directory for the area in which the subject property is located. As these examples indicate, extraordinary measures are not necessary, and no single method of inquiry is either required or sufficient in every case. Reasonable diligence requires the sort of further inquiry that would be undertaken by a person of ordinary prudence desirous of locating the intended recipient's correct address.

 When all of the notices sent to Ms. Plemons were returned unclaimed, Advantage knew that she had not received actual notice of the pending tax sale. At that point, the reasonable diligence standard required Advantage to make further inquiry reasonably calculated to locate Ms. Plemons' correct address. Advantage could have ascertained Ms. Plemons' correct address through a number of different

means. Advantage could have simply called Ms. Plemons on the telephone; she was listed in the local telephone directory throughout the notice period. Advantage could have asked the tenants living at the subject property for help locating Ms. Plemons. Advantage could have made inquiry to others holding an interest in the property, such as Ms. Plemons' mortgagee. The court need not determine whether any of these actions individually would have satisfied the reasonable diligence standard, because after the mailing notice was returned unclaimed, Advantage took none of these actions and made no further inquiry prior to publishing notice. Advantage did not act with reasonable diligence in attempting to give Ms. Plemons notice of her right to redeem. The notice given by Advantage does not satisfy the requirements of due process.

## III CONCLUSION

Section 11A–4–4 of the West Virginia Code allows an interested party to set aside a tax sale deed if that party proves by clear and convincing evidence that the tax sale purchaser failed to give constitutionally adequate notice. In the tax sale context, notice is constitutionally adequate when the purchaser makes a reasonably diligent effort to provide the interested party with actual notice prior to the issuance of a tax sale deed. When notice sent by certified mail is returned unclaimed, the reasonable diligence standard requires the purchaser to make further inquiry reasonably calculated to locate the interested party's correct address. After all notices mailed to Ms. Plemons were returned unclaimed, Advantage failed to make any further inquiry as to her correct address. Therefore, the court **FINDS** that Ms. Plemons has proven by clear and convincing evidence that Advantage failed to provide her with constitutionally adequate notice, and that, under § 11A–4–4, she is

entitled to set aside the tax sale deed now held by Advantage's successor in interest, Douglas Q. Gale. Pursuant to West Virginia Code § 11A–4–4, the court **ORDERS** that Gale's deed to the subject property be set aside after Ms. Plemons tenders payment of the amount required for redemption, the amount of any taxes paid on the subject property since the transfer of the deed, and interest at the rate of twelve percent per annum. The court **GRANTS** the plaintiff's Motion for Summary Judgment [Docket 13], **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at *http://www .wvsd.uscourts.gov.*