2008-NMCA-023

176 P.3d 1178

Ollie W. GATES, Plaintiff–Appellee,

v.

State of NEW MEXICO, TAXATION AND REVENUE DEPARTMENT, Property Tax Division, Torrance County, a New Mexico County, Robert Rubin, Freddie Chavez, and Ray and Joyce Halderman, Defendants–Appellants,

and

Ray and Joyce Halderman, Counterclaimants–Appellants.

No. 26,726.

Court of Appeals of New Mexico.

Dec. 17, 2007.

Miller Stratvert P.A., Deron B. Knoner, Albuquerque, NM for Appellee.

Gary K. King, Attorney General, David A. Stevens, Special Assistant Attorney General, Santa Fe, NM, for Appellant NM Taxation and Revenue Department.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Timothy R. Van Valen, Alex C. Walker, Albuquerque, NM, for Appellants Ray and Joyce Halderman.

## OPINION

WECHSLER, Judge.

{1} In this case, involving the New Mexico Taxation and Revenue Department's (TRD) tax sale of a private landowner's real property in response to his failure to pay property taxes for several years, two distinct issues have arisen. First, we must decide whether Rule 1–041(A)(1)(b) NMRA permits litigants to stipulate to dismiss undecided claims remaining after a partial summary judgment in order to have a final order for appeal. Second, we consider the lengths to which TRD must go in order to comply with the requirements of constitutional due process when attempting to provide notice to deficient taxpayers before initiating public sales of their real property. We conclude that (1) although Rule 1–041(A) only allows for the voluntary dismissal of entire actions, the stipulated dismissal of two of four individual claims in this case was permissible under Rule 1–015(A) NMRA and (2) the State was not reasonably diligent in attempting to locate the reasonably ascertainable contact information of the deficient taxpayer before selling his real property at auction. We affirm.

## FACTUAL BACKGROUND

{2} Plaintiff Ollie Gates is a long-time resident of Kansas City, Missouri, who owns dozens of pieces of property in the Kansas

City metropolitan area, including a chain of barbeque restaurants. In 1977, Plaintiff purchased a parcel of rural land (the Property) located in Torrance County, New Mexico. After purchasing the Property, Plaintiff remained a Missouri resident and never relocated to New Mexico. In 1996, Plaintiff began to lease the Property to Joe and Mary Jane Chavez for the purpose of livestock grazing. They did not record the lease. After entering into the lease agreement, the Chavezes contacted the Torrance County Electric Cooperative and set up electrical service on the Property. The Chavezes' lease agreement with Plaintiff was in effect until Defendants Ray and Joyce Halderman purchased the Property from TRD in the August 2002 tax sale at issue in this case.

{3} In May 1997, Plaintiff's primary mailing address in Missouri changed, but he failed to effectively relay his new contact information to Torrance County officials. Each year from 1998 to 2002 the Torrance County Treasurer mailed property tax bills to Plaintiff's pre-May 1997 mailing address, and each year the bills were marked as "forwarding order expired" and returned by the postal service. During that period of time, Plaintiff failed to pay any taxes owed on the Property because he did not realize that any money was due.

{4} In July 2001, officials in Torrance County forwarded to TRD a list of delinquent property tax accounts, which included Plaintiff's account. In early 2002, a TRD employee was assigned the task of locating Plaintiff in order to collect the back taxes. The TRD employee's first attempt failed when he was unable to find Plaintiff's contact information in the Torrance County property records. Next, he attempted to physically access the Property in order to either personally notify Plaintiff or to provide him with notice by placing a "red tag" warning of the tax deficiency in a conspicuous place. During that attempt, he encountered a locked gate that denied access to the Property and, because he was unsure if the gate belonged to Plaintiff, opted not to affix the "red tag." Shortly after, the TRD employee learned that Defendants owned a home on the land adjacent to the Property. He eventually contacted Defendant Ray Halderman by telephone and asked if he knew Plaintiff. Mr. Halderman indicated that he had never met Plaintiff and did not know his contact information. Next, the TRD employee called telephone operators in New Mexico and Missouri. The operators in New Mexico had no record of Plaintiff, but the operators in Missouri informed him that there were unpublished Missouri telephone numbers under Plaintiff's name. The TRD employee's final effort in attempting to locate Plaintiff was to enter Plaintiff's name into two Internet databases that provide published telephone and address listings of people living in the United States. The two databases did not provide him with any useful information. The TRD employee had previously used a free Internet search engine to locate deficient taxpayers when it was absolutely necessary, but he did not know whether he conducted such a search in this case.

{5} On July 31, 2002, after the TRD employee had given up his efforts to locate Plaintiff, TRD mailed a certified letter to the address that it had on record for Plaintiff, warning him that his property would be sold at a public auction in order to pay his tax debts. The letter was returned to TRD by the postal service marked with the words "forwarding order expired." TRD then advertised the sale of the Property in a regional newspaper in a final attempt to notify Plaintiff of the impending public auction. After the publication, Defendants learned that the Property was on the market. The auction took place on August 28, 2002, and Defendants made the winning bid of $22,000. Plaintiff did not receive actual notice of the sale of the Property until his tenant, Mary Jane Chavez, informed him that Defendants had purchased it at the tax sale.

**PROCEDURAL BACKGROUND**

{6} Plaintiff filed a civil complaint against Defendants on September 20, 2002, alleging four claims: (I) "avoid conveyance and void sale," (II) quiet title, (III) unjust enrichment, and (IV) prima facie tort. Each claim stems from the assertion that the Property was wrongfully conveyed to Defendants. In January 2004, Plaintiff and Defendants filed cross-motions for summary judgment in the district court, which were both denied. On May 24, 2004, Plaintiff and Defendants filed a

joint motion to reconsider their respective cross-motions for summary judgment. The motion included a list of stipulated facts and asked the district court to make a definitive ruling only with respect to Claims I and II, which alleged that Plaintiff was not afforded adequate notice before the Property was sold at auction. In response, the district court issued a memorandum decision granting partial summary judgment in favor of Plaintiff and declaring him to be the "lawful owner of the Property" because "the State's efforts to notify [him] were constitutionally inadequate." The memorandum decision settled the first two claims of the complaint in Plaintiff's favor but left his unjust enrichment and prima facie tort claims undecided.

{7} Unhappy with the district court's decision, Defendants submitted an application for leave to file an interlocutory appeal to this Court, which was denied on September 9, 2004. Plaintiff and Defendants then continued preparing for trial on Claims III and IV. On March 31, 2006, Plaintiff and Defendants filed a "stipulation of dismissal without prejudice" under Rule 1–041(A)(1)(b), which indicated that the parties had reached an agreement to dismiss the remaining two claims. Defendants filed their notice of appeal with the district court on April 27, 2006.

**THE FINAL JUDGMENT RULE**

■ {8} Generally, a civil action may only be appealed to this Court if a "final order" or a "final judgment" has been entered by the district court. NMSA 1978, § 39–3–2 (1966); *see also* Rule 12–201(A) NMRA. In certain circumstances, this Court may also grant an interlocutory appeal after the district court enters an order that "practically disposes of the merits of the action." Section 39–3–2; *see also* Rule 12–203 NMRA. As such, partial summary judgment orders are not appealable final orders when other claims are left unresolved but, rather, can only be heard by this Court in an interlocutory appeal. *See Govich v. N. Am. Sys., Inc.,* 112 N.M. 226, 229, 814 P.2d 94, 97 (1991) ("By its terms, the partial summary judgment order left unresolved . . . claims and, thus, the . . . order cannot be a final order from which appeal properly may be taken.") (footnote omitted). In this case, Defendants argue, and Plaintiff agrees, that the district court's partial summary judgment order became a "final order,"

and therefore appealable to this Court, the moment they filed the stipulation of dismissal without prejudice regarding the remaining undecided claims under Rule 1–041(A)(1)(b). We disagree with Plaintiff's and Defendants' interpretation of Rule 1–041(A)(1)(b) but agree that their written agreement to dismiss Claims III and IV finalized the district court's order of partial summary judgment and that we have jurisdiction to decide the merits of this case.

**VOLUNTARY DISMISSAL OF INDIVIDUAL CLAIMS**

■ {9} Although neither party in this case advanced the issue of finality, we are able to raise jurisdictional issues sua sponte. *Masterman v. State Taxation & Revenue Dep't,* 1998–NMCA–126, ¶ 9, 125 N.M. 705, 964 P.2d 869. The resolution of the jurisdictional issue in this case requires us to interpret our rules of civil procedure. We do so under de novo review. *Becenti v. Becenti,* 2004–NMCA–091, ¶ 6, 136 N.M. 124, 94 P.3d 867.

{10} In interpreting a Supreme Court rule of procedure, we look first to the rule's plain language. *In re Michael L.,* 2002–NMCA–076, ¶ 9, 132 N.M. 479, 50 P.3d 574. "If the rule is unambiguous, we give effect to its language and refrain from further interpretation." *Id.* The plain language of Rule 1–041(A)(1)(b) indicates that a plaintiff may dismiss "an *action* . . . without order of the court . . . by filing a stipulation of dismissal signed by all parties who have appeared generally in the action." (Emphasis added.) We must determine whether the word "action" in this context may be interpreted to allow for the dismissal of individual claims.

{11} There appears to be no New Mexico case law that is applicable to our discrete issue. As such, because Rule 1–041(A)(1)(b) is virtually identical to Federal Rule of Civil Procedure 41(a)(1)(ii), we turn to the interpretations of federal courts for guidance. *See Benavidez v. Benavidez,* 99 N.M. 535, 539, 660 P.2d 1017, 1021 (1983) (explaining that it is appropriate to look to judicial interpretations of corresponding federal rules when analyzing our rules of civil procedure).

{12} The general rule among the federal courts is that Rule 41(a) does not allow plaintiffs to dismiss individual claims. *See, e.g., Gobbo Farms & Orchards v. Poole Chem. Co.,* 81 F.3d 122, 123 (10th Cir.1996) ("[The appellant] offers no authority, and we have found none, to support its contention that Rule 41(a) applies to dismissal of less than all claims in an action."); *Ethridge v. Harbor House Rest.,* 861 F.2d 1389, 1392 (9th Cir.1988) (refusing to allow a plaintiff to "delete one claim among several from his complaint" using Rule 41(a)); *Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515, 518 (Fed.Cir. 1987) (agreeing with the conclusions of other jurisdictions that Rule 41(a) does not allow for the dismissal of individual claims within an action); *see also* 8 James W. Moore, *Moore's Federal Practice* § 41.21[1], at 41–30 (3d ed. 2007) ("Rule 41(a) may not be employed to dismiss fewer than all of the claims against any particular defendant."). Such a reading has become the predominant interpretation because the plain language of Rule 41(a) permits the voluntary dismissal of "an *action,* meaning the totality of all component claims asserted against a single defendant." *Vogel v. Am. Kiosk Mgmt.,* 371 F.Supp.2d 122, 129 (D.Conn.2005) (emphasis added).

{13} We also note that our rule, in language that is identical to the corresponding federal rule, tends to indicate that an "action" and a "claim" cannot be considered one in the same. For example, Rule 1–041(B) states, "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action *or* of any claim against the defendant." (Emphasis added.) The differentiation between dismissing an action "or" a claim in this subsection intimates that the rule was drafted with the intention of avoiding the interchangeable use of the words. *See Campbell v. Hoffman,* 151 F.R.D. 682, 684 (D.Kan.1993)("The language of Rules 41(a)(1), 41(b), and 41(d) refer to both actions and claims, indicating that the drafters of Rule 41 drew a distinction between those two terms and intended them to have different meanings."); *see also* 8 Moore, *supra,* § 41.21[1], at 41–31 ("Had the drafters intended to authorize the . . . dismissal of individual claims instead of the entire action, they could have clearly said so.").

{14} Because of the plain language of Rule 1–041(A), we conclude that it allows for the voluntary dismissal of actions without the approval of the district court but that it does not allow for the voluntary dismissal of individual claims that make up an action. Our conclusion, however, does not suggest that our rules of civil procedure do not allow for the dismissal of individual claims. On the contrary, Rule 1–015(A) explicitly provides that "a party may amend his pleading only by leave of court *or by written consent of the adverse party;* and leave shall be freely given when justice so requires." (Emphasis added.) Following the requirements of this rule, parties may consent in writing to remove claims from a complaint. In the present case, even though Plaintiff and Defendants erroneously indicated that their March 31, 2006 "stipulation of dismissal" was permissible under Rule 1–041(A)(1)(b), the practical effect of the agreement was equivalent to producing the "written consent of the adverse party" required by Rule 1–015(A).

{15} We see no legitimate reason to punish Plaintiff and Defendants for improperly, but inconsequentially, citing Rule 1–041(A)(1)(b) in their stipulation of dismissal as the appropriate authority under which to dismiss Plaintiff's remaining individual undecided claims. By creating a written agreement that indicated Defendants' consent, they effectively dismissed Claims III and IV pursuant to Rule 1–015(A). As a consequence, the district court's grant of partial summary judgment constitutes a final order, and we have jurisdiction to address the constitutional due process issue raised by Defendants.

## NOTICE AND CONSTITUTIONAL DUE PROCESS

{16} As to the merits, Defendants argue that the district court erred in granting partial summary judgment in favor of Plaintiff and ruling that he is the rightful owner of the Property. Specifically, they assert that (1) TRD's efforts in attempting to locate Plaintiff "exceeded constitutional due process requirements," (2) Plaintiff's post–1997 contact information was not reasonably ascertainable, and (3) Defendants' purchase of the Property at the tax sale was valid and legally conveyed title to them. We disagree.

{17} In considering this case, we are guided by the precedent set in *Patrick v. Rice*, 112 N.M. 285, 814 P.2d 463 (Ct.App.1991), which was reinforced by a recent holding of the United States Supreme Court. *See Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 1713, 164 L.Ed.2d 415 (2006) (holding that upon the return of an unclaimed notice of a tax sale, the Due Process Clause of the Fourteenth Amendment requires the state to "take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so"). In *Patrick*, we clarified the general rule that constitutional due process requires the state to exercise "reasonable diligence" in attempting to notify deficient taxpayers before selling their real property in order to collect compensation for back taxes. *Patrick*, 112 N.M. at 289, 814 P.2d at 467. In determining whether specific efforts are "reasonably diligent," the inquiry becomes "whether the identity and location of a party entitled to notice [is] reasonably ascertainable." *Id.* (internal quotation marks and citation omitted).

■ {18} Although the issue of "reasonable ascertainability" is highly dependent on the specific facts of a particular case, it is ultimately a question of law. *Id.* at 289–90, 814 P.2d at 467–68. Our standard of review is therefore de novo. *See id.* at 290, 814 P.2d at 468; *see also State v. Johnson*, 2004–NMCA–058, ¶ 12, 135 N.M. 567, 92 P.3d 13 ("Because the trial court's ultimate conclusion drawn from the facts was a legal determination, . . . we review it de novo.").

{19} In *Patrick*, we recognized that "[w]hen [TRD] holds a tax sale, that is a taking of property by the government, [and] the notice of such taking must comply with minimum due process standards under the United States and New Mexico Constitutions." *Patrick*, 112 N.M. at 288, 814 P.2d at 466; *accord Jones*, 126 S.Ct. at 1718 ("[B]efore forcing a citizen to satisfy his [tax] debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking."). In *Patrick*, we determined that TRD's sale of the plaintiffs' real property for tax delinquency was "constitutionally inadequate" after carefully considering the "many ways the division could have ascertained [the] plaintiffs' current address." *Patrick*, 112 N.M. at 290, 814 P.2d at 468. The combination of the following factors in *Patrick* convinced us that TRD's failure to provide actual notice and use only of notice by publication denied the plaintiffs their right to due process: (1) failing to locate the plaintiffs' correct address information, which was somewhere in TRD's files; (2) failing to notice the correct address information on the top of a personal check sent to the county; (3) failing to contact the electric company in order to inquire about the contact information that it had on record for the plaintiffs; and (4) failing to physically tag the property to provide actual notice. *Id.*

■ {20} While we agree with Defendants' assertion that due process "does not require that every stone be unturned," considering the facts presented in this case in conjunction, similar to our analysis of the facts in *Patrick*, leads to the conclusion that TRD's efforts in attempting to locate Plaintiff fell short of the "reasonable diligence" standard. *See id.* at 289–90, 814 P.2d at 467–68. The combination of methods by which Plaintiff's current contact information could have been discovered indicates that it was reasonably ascertainable. First, TRD failed to contact the Torrance County Electric Cooperative, which would have given TRD contact information for the Chavezes, who knew how to get in touch with Plaintiff. Second, TRD failed to tag any part of the Property, which would have alerted the Chavezes to the tax deficiency. Third, TRD was reasonably certain that Plaintiff resided in Kansas City, Missouri, but it failed to follow up by attempting to access any public records from Missouri that could have revealed Plaintiff's current contact information. Fourth, TRD only accessed two Internet websites, both of which were databases that contained published telephone and address information, knowing that all of the Missouri contact information listed under Plaintiff's name was unpublished. Fifth, although Plaintiff is a prominent businessman and property owner whose contact information is readily available on a number of Internet websites that can be easily accessed by utilizing free search engines and databases, the TRD employee charged with locating Plain-

tiff "does not know" if any simple search of this type was ever conducted.

{21} Any method listed above could have led TRD directly to Plaintiff's contact information. Considered together, we conclude that Plaintiff's contact information was reasonably ascertainable and that TRD was not reasonably diligent in attempting to contact him before taking the drastic step of auctioning the Property to pay for his tax debts.

## CONCLUSION

{22} We affirm the district court's decision to grant partial summary judgment in favor of Plaintiff.

{23} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and MICHAEL E. VIGIL, Judges.