This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38560**

**DONNA ALMAREZ,**

      Plaintiff-Appellee,

v.

**JAMES ERBES,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Judge**

Almanza Abrams, P.A.
Jared Abrams
Las Cruces, NM

for Appellee

The Turner Law Firm, LLC
Scott E. Turner
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Defendant James Erbes appeals from a summary judgment in a quiet title action invalidating his acquisition of property, owned by Plaintiff Donna Almarez, through a tax sale conducted by the New Mexico Taxation and Revenue Department (TRD) to satisfy Almarez's tax delinquency. In granting summary judgment, the district court concluded that the tax sale notice was both statutorily and constitutionally inadequate. Because the court's conclusions were based on misinterpretations of the law, summary judgment was inappropriate, and we accordingly reverse.

## BACKGROUND

**{2}** Following several years of Almarez's failure to pay property taxes on her home in Doña Ana County, New Mexico (the Property), TRD began efforts to satisfy that delinquency through a tax sale, pursuant to the Property Tax Code, NMSA 1978, §§ 7-35-1 to 7-38-93 (1973, as amended through 2020).[1] *See generally* § 7-38-48 (creating a property tax lien against real property); §§ 7-38-61, -62(A) (authorizing TRD to "take all action necessary to collect delinquent taxes" for property on which taxes have been delinquent for more than two years); § 7-38-65(A) (allowing TRD, within specified timeframes, to "collect delinquent taxes on real property [on which a lien exists by operation Section 7-38-48] by selling [it]").

**{3}** Prior to the sale of the Property, TRD provided certain notice. TRD first posted a red tag on the gate at the entrance of the Property. One month prior to the tax sale, TRD sent a tax sale notice by certified mail, return receipt requested, to Almarez's physical address. The notice informed Almarez that, if the outstanding taxes and associated penalties, interest, and costs were not paid by a certain date, a deed granting title to the Property would be sold at a tax sale. *See* § 7-38-66(A), (B) (requiring TRD to mail by certified mail, return receipt requested, notice of the impending sale of tax-delinquent property to the address, as shown on the most recent property tax schedule, of the property owner). Almarez's physical address was the address of record for property tax purposes and the address at which Almarez received her mail. At the same time, TRD sent by regular mail the tax sale notice to Almarez's physical address. TRD also sent by regular mail and certified mail, return receipt requested, the tax sale notice to an old address of Almarez's. Finally, TRD had a notice of the tax sale published in the local newspaper once a week for the three weeks prior to the tax sale. *See* § 7-38-67(B) (providing that "[n]otice of the sale shall be published in a local newspaper within the county where the real property is located . . . at least once a week for the three weeks immediately preceding the week of the sale").

**{4}** Almarez apparently did not see the tag or the newspaper notices. In addition, all of the mailings to Almarez were returned to TRD three weeks prior to the sale with the notations, "return to sender, no mail receptacle, unable to forward" or "return to sender, not deliverable as addressed, unable to forward." During this time, Almarez was having trouble with mail delivery. Almarez contacted the post office three times about the problem but did not resolve it. There is no indication in the record that TRD knew about Almarez's difficulties with her postal service.

**{5}** The Property was sold in April 2018 at a tax sale to Erbes. Three months later, Almarez learned of the sale when Erbes contacted her. Almarez then filed an action in district court to either quiet title or set the tax sale aside; she named Erbes as the sole defendant. In his answer to Almarez's complaint, Erbes asserted three counterclaims: to quiet title in his name, for declaratory judgment, and for unlawful detainer. He further

---

[1]Throughout this opinion, except where otherwise noted, the current version of the Property Tax Code is referenced, even though in some instances a prior version was in effect at the time of the events relevant to this case, because the amendments are not material to our resolution of the issues in this case.

asserted seven affirmative defenses, including that the complaint failed to join necessary and indispensable parties—namely, TRD—to the action.

**{6}** Almarez then moved for summary judgment. By and large, Almarez alleged that TRD's attempts to notify her of the impending tax sale were unsuccessful and that TRD's notice therefore did not meet statutory and constitutional due process requirements. Given those inadequacies, she argued, the sale was invalid and should be set aside.

**{7}** Erbes did not file a cross-motion for summary judgment. In response to Almarez's motion for summary judgment, Erbes alleged additional undisputed material facts but did not argue the existence of any disputed issue of material fact. Erbes instead refuted Almarez's legal contentions, arguing that the tax sale notice was both statutorily and constitutionally adequate. Erbes also alleged that Almarez's motion was deficient, in that it failed to address the affirmative defenses asserted in his answer. At the hearing on the motion, as an example of this deficiency, Erbes contended that TRD was a necessary and indispensable party, but he did not argue the merits of this contention or request a ruling from the district court on the matter.

**{8}** The district court agreed with Almarez and granted summary judgment. The court determined that "[t]here are no disputed issues of material fact that [Almarez] did not receive actual notice" and, on this basis, concluded that the tax sale notice was statutorily and constitutionally inadequate. The court additionally ruled, sua sponte, that under Rule 1-019(A)(1) NMRA, TRD was not a necessary and indispensable party. Having resolved all of Almarez's claims in her favor, the district court entered judgment pursuant to Rule 1-054(B) NMRA, permitting Erbes to appeal prior to the adjudication of his counterclaims.

**{9}** Erbes appeals the grant of summary judgment, challenging the district court's conclusion that TRD's notice was statutorily and constitutionally deficient, and further challenging the court's determinations that Almarez's motion did not need to address his affirmative defenses and that TRD was not a necessary and indispensable party.

## DISCUSSION

**{10}** "The validity of a tax sale under New Mexico law is dependent upon compliance by tax officials with both statutory and constitutional due process requirements." *Fulton v. Cornelius*, 1988-NMCA-057, ¶ 13, 107 N.M. 362, 758 P.2d 312; *see Cordova v. N.M. Tax'n & Revenue*, 2005-NMCA-009, ¶ 22, 136 N.M. 713, 104 P.3d 1104 (same). Whether TRD provided Almarez with adequate notice under the applicable statute and as a matter of due process is a question of law we review de novo. *See Cordova*, 2005-NMCA-009, ¶ 17.

**{11}** Likewise, the grant of summary judgment is reviewed de novo. *Fed. Nat'l Mortg. Ass'n v. Trissell*, 2022-NMCA-001, ¶ 5, 503 P.3d 381, *cert. denied* (S-1-SC-38867, Dec. 22, 2021). The moving party—here, Almarez—bears the burden of establishing a prima

facie case for summary judgment. *See id.* ¶ 6. That burden includes showing not only the absence of any genuine issue of material fact, but also that the movant is entitled to judgment as a matter of law. *See* Rule 1-056(C) NMRA; *Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720; *see also Junge v. John D. Morgan Constr. Co.*, 1994-NMCA-106, ¶¶ 11-12, 118 N.M. 457, 882 P.2d 48 (recognizing that, even where the facts are as the movant alleges, summary judgment is appropriate only where the movant shows entitlement to judgment under the law). Accordingly, in some cases, summary judgment is properly denied even before the burden shifts to the nonmovant. *See Brown*, 1995-NMSC-050, ¶ 8.

**{12}** As we discuss below, this is one such case. We first take up the grant of summary judgment on Almarez's claim that the tax sale notice did not comply with the Property Tax Code. Next, we take up the grant of summary judgment on Almarez's claim that the tax sale notice was constitutionally deficient. Reversing on both grounds, we do not reach Erbes' additional claims of error.

## A.      Statutory Notice

**{13}** In her motion for summary judgment, Almarez first argued that the tax sale was invalid because TRD failed to comply with Section 7-38-66's notice requirements. Among other things, Section 7-38-66 specifies what TRD must mail the delinquent taxpayer before a tax sale and how it must be sent, as well as the effect of TRD's failure to mail such notice and of the return of such a mailing. In relevant part, Section 7-38-66 provides:

> A.      [B]efore the date of the sale for delinquent taxes, [TRD] shall notify by certified mail, return receipt requested . . . to the address as shown on the most recent property tax schedule, each property owner whose real property will be sold that the owner's real property will be sold to satisfy delinquent taxes.
>
> . . . .
>
> D.      Failure of [TRD] to mail a required notice by certified mail, return receipt requested, shall invalidate the sale; provided, however, that return to [TRD] of the notice of the return receipt shall be deemed adequate notice and shall not invalidate the sale.

Almarez conceded below, and now concedes on appeal, that, in terms of the notice required by Subsection A, TRD did its part. Almarez's apparent contention was that, under the circumstances of this case—where the notice was returned undelivered—TRD was required to do something more under Section 7-38-66 prior to moving forward with the tax sale.

**{14}** Thus, we are faced with the question of what, if anything, TRD is required to do if the tax sale notice sent via certified mail, return receipt requested, comes back

undelivered. This Court squarely answered that question in *Cordova* over fifteen years ago. Interpreting Section 7-38-66(D) (1990),[2] *Cordova* held that the post office's return of an unclaimed, unsigned notice does not invalidate a tax sale under that section. *See* 2005-NMCA-009, ¶ 21 ("[T]he fact that the post office returned the envelope [addressed to the delinquent taxpayer per Section 7-38-66] containing [the tax sale] notice to [TRD] stamped 'unclaimed' and with an unsigned return receipt does not invalidate the subsequent tax sale."). Looking at a 1990 amendment to Section 7-38-66, this Court deduced that the Legislature intended for TRD to proceed with a tax sale even where the certified mailing had not reached the delinquent taxpayer. *See Cordova*, 2005-NMCA-009, ¶¶ 18-20 (concluding that the 1990 deletion of language in Section 7-38-66 "was intended to legislatively overrule" a New Mexico Supreme Court decision that held that the return of the certified mailing "unclaimed" did not comply with Section 7-38-66). In sum, *Cordova* held that, so long as TRD complies with Section 7-38-66(A)'s mailing requirement, TRD's statutory notice obligations are met, and the delinquent taxpayer's nonreceipt of the tax sale notice does not invalidate the tax sale under Section 7-38-66(D). *See Cordova*, 2005-NMCA-009, ¶¶ 18-21.

**{15}** In her motion, Almarez attempted to avoid application of *Cordova* to her case in two ways. First, Almarez contended *Cordova* should not apply to her case, given that the taxpayer there purportedly had actual knowledge of the tax sale,[3] whereas Almarez did not. *Cordova*, however, is not so limited. This Court's holding in *Cordova* did not consider, let alone turn on, whether the taxpayer had actual notice of the tax sale. *See id.* Instead, *Cordova* decided a legal question of statutory construction to determine what the Legislature intended by the language in Section 7-38-66(D). *See id.* Next, Almarez posited that it would be absurd to interpret Section 7-38-66 as approving of a taxpayer's loss of real property through a tax sale where the taxpayer had no actual notice of the impending sale. Yet interpreting Section 7-38-66 in this way is precisely what this Court did in *Cordova*, having striven to promote legislative intent. *See Cordova*, 2005-NMCA-009, ¶¶ 18-21; *see also, e.g.*, *State ex rel. State Eng'r v. Lewis*, 1996-NMCA-019, ¶ 16, 121 N.M. 323, 910 P.2d 957 ("[T]he consequences of a legislative policy embodied in an unambiguous statute are matters for the [L]egislature, not this Court.").

**{16}** In short, Almarez's lack of actual notice of the impending tax sale does not, as she contended, render *Cordova*'s interpretation of Section 7-38-66 inapplicable here. Thus, the district court's holding that "[t]he facts in *Cordova* . . . are distinguishable from the case at bar in that it is undisputed that [Almarez] was not notified of the tax sale" was error. Almarez failed to make a prima facie showing of entitlement to judgment as a

---

2Although *Cordova* interpreted the 1990 version of Section 7-38-66(D), that subsection is the same as the version applicable here. *See Cordova*, 2005-NMCA-009, ¶ 18. *Compare* § 7-38-66(D) (1990), *with* § 7-38-66(D). *Cordova* therefore applies to this case.

3Almarez argued that the taxpayer in *Cordova* "had actual knowledge of the proceeding." But *Cordova* suggests this fact was disputed in part. *See* 2005-NMCA-009, ¶ 5. Almarez also contended the taxpayer in *Cordova* was "playing games" by "hid[ing] from the postman like a child." Although this Court observed that the taxpayer claimed to have "failed to accept delivery of the certified letter," *id.* ¶ 30, nowhere in *Cordova* did this Court make the findings to which Almarez refers. Regardless, as we discuss, these contentions are not material to *Cordova*'s holding.

matter of law on her statutory notice claim; we accordingly reverse the district court's grant of summary judgment in her favor on this claim. *See Centex/Worthgroup, LLC v. Worthgroup Architects, L.P.*, 2016-NMCA-013, ¶ 26, 365 P.3d 37 (reversing where the grant of summary judgment was based on the district court's mistaken interpretation of the law).

## B.      Due Process Notice

**{17}**    Almarez also argued in her motion for summary judgment that the tax sale was invalid because the notice she received violated due process.[4] Our review again is informed by *Cordova*, as well as *Jones v. Flowers*, 547 U.S. 220 (2006), a United States Supreme Court case decided soon after *Cordova*. *See Gates v. N.M. Tax'n & Revenue Dep't*, 2008-NMCA-023, ¶ 17, 143 N.M. 446, 176 P.3d 1178 (citing *Jones* as guidance for determining whether a tax sale comported with due process). Both *Cordova* and *Jones* dealt with the issue presented here—i.e., the standard for satisfying due process "when the government becomes aware prior to the taking [of real property] that its attempt at notice has failed." *Jones*, 547 U.S. at 227; *see id.*; *Cordova*, 2005-NMCA-009, ¶¶ 23, 29.

**{18}**    In addressing this issue, both *Cordova* and *Jones* applied the due process standard from *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950), and emphasized that the relevant inquiry is not whether the taxpayer received actual notice before the government may take their property, but whether the government employed a method of "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones*, 547 U.S. at 226-27 (quoting *Mullane*, 339 U.S. at 314); *see Cordova*, 2005-NMCA-009, ¶¶ 22-24, 29-30. That is, the means employed by the government "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315; *see Jones*, 547 U.S. at 229; *Cordova*, 2005-NMCA-009, ¶ 22. *See generally Mullane*, 339 U.S. at 313-14 (balancing the interest of the state against that of the individual to assess the constitutional adequacy of a particular form of notice).

**{19}**    Applying these concepts, *Cordova* concluded that "the return of mailed notice as undeliverable or unclaimed is a factor in deciding whether the sender utilized a method of notice reasonably calculated, under all the circumstances, to apprise interested parties." 2005-NMCA-009, ¶ 23 (internal quotation marks and citation omitted). Even though the taxpayer in that case failed or refused to accept the certified letter, *Cordova* still concluded that, under all the circumstances—including that TRD had mailed the certified letter to the taxpayer's residence, where he received mail—TRD made a prima

---

4Because Almarez's motion did not cite the New Mexico Constitution's due process clause, or argue that this clause provides greater protection than the federal due process clause, we analyze her due process claim under federal law alone. *See State v. Gomez*, 1997-NMSC-006, ¶ 23, 122 N.M. 777, 932 P.2d 1 (providing that, "when a party asserts a state constitutional right that has *not* been interpreted differently than its federal analog, a party also must assert *in the trial court* that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart *and* provide reasons for interpreting the state provision differently from the federal provision").

facie showing of adequate notice. *See id.* ¶¶ 27-28. Because the taxpayer did "not call into question the reasonableness of [TRD's] attempt to serve [him] with notice by certified mail sent to [the taxpayer's] correct address," due process was satisfied. *See id.* ¶¶ 28-30.

**{20}**    In *Jones*, the United States Supreme Court elaborated on the government's obligations in this context. The Court concluded that "[i]n response to [a] returned form suggesting that [the taxpayer] had not received notice that he was about to lose his property, . . . the [s]tate should . . . take[] additional reasonable steps to notify [the taxpayer], *if practicable to do so.*" *Jones*, 547 U.S. at 234 (emphasis added). The Court continued, "The question remains whether there were any such available steps," and, "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing." *Id.* In *Jones*, the attempted notice to the taxpayer of the impending sale consisted of only a publication in a local newspaper and two certified letters mailed more than two years apart to an address at which the taxpayer did not receive mail, both of which were returned unclaimed. *See id.* at 223-24. In concluding the state's efforts to provide notice were constitutionally deficient, *Jones* remarked that the state could have taken the additional reasonable steps of resending the letter by regular mail or posting a notice on the front door of the home. *See id.* at 234-35.

**{21}**    In light of *Cordova* and *Jones*, the deficiencies in Almarez's motion for summary judgment are apparent. Although Almarez cited the basic standard that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action," *see Jones*, 547 U.S. at 226; *Cordova*, 2005-NMCA-009, ¶ 22, she did not argue that TRD's notice—its multiple mailings to Almarez's correct mailing address by both certified and regular mail, its red tag posting, and its multiple newspaper publications—fell short of that standard. Nor did she allege there were other steps, both reasonable and practicable, that TRD could have taken, but did not take, following the return of the mailings. *See Jones*, 547 U.S. at 234-35. Instead, Almarez stressed she had no actual notice of the sale and attempted to distinguish her case from *Cordova*.[5] As we have already established, *Cordova* and *Jones* defeat Almarez's preconception that a tax sale conducted without the delinquent taxpayer's actual notice necessarily violates due process.[6] *See Jones*, 547 U.S. at 226 ("Due process does not

---

[5]Almarez again argues that the taxpayer in *Cordova* "had actual knowledge of the proceeding." As stated, it appears this fact was disputed in part. *See* 2005-NMCA-009, ¶ 5. Regardless, as discussed, *Cordova* provided that "under *Mullane*, the relevant inquiry is *not* whether [the taxpayer] actually received the notice, but rather, whether [TRD] employed a method of service reasonably calculated to result in [the taxpayer's] actual receipt of the notice." *Cordova*, 2005-NMCA-009, ¶ 29 (emphasis added).

[6]As support for her contention that actual notice is required to comport with due process, Almarez's motion relied on *In re Rescission of Prior Determination Relating to Sandia Foundation Construction Projects*, 2014-NMCA-083, ¶ 13, 331 P.3d 1003, and "*Montoya v. Moreno*," a case we cannot locate. We have no choice but to disregard *Montoya*. As for *Sandia*, it did not hold that actual notice was required— but only that, when an individual has actual notice, the due process analysis must take this into account. *See* 2014-NMCA-083, ¶¶ 12-13.

require that a property owner receive actual notice before the government may take his property."); *Cordova*, 2005-NMCA-009, ¶ 29.

**{22}** In short, Almarez's reliance on the lack of actual notice as the basis for her due process claim was insufficient under *Cordova* and *Jones* to make a prima facie showing of entitlement to judgment on the due process claim. The district court's agreement with Almarez on this point—having found that Almarez "did not receive actual notice" and "was not notified of the tax sale"—was thus error. We accordingly reverse the district court's grant of summary judgment in Almarez's favor on this claim. *See Centex/Worthgroup*, 2016-NMCA-013, ¶ 26.

**CONCLUSION**

**{23}** For the foregoing reasons, Almarez failed in her motion for summary judgment to accurately interpret the law and, thus, make a prima facie showing that she was entitled to judgment as a matter of law on her claims that the tax sale notice was both statutorily and constitutionally inadequate. *See, e.g.*, *Brown*, 1995-NMSC-050, ¶ 8; *see also* Rule 1-056(C) (conditioning summary judgment on the movant's entitlement to judgment as a matter of law). Accordingly, we reverse in its entirety the district court order granting summary judgment, and we remand for proceedings consistent with this opinion.[7] *See* 5 C.J.S. *Appeal and Error* § 1126 (2022) ("A reversal of a summary judgment decision returns the posture of the case to the point at which the summary judgment was entered.").

**{24} IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

---

[7]On appeal, Erbes also raises two claims of procedural error. He first argues that summary judgment was improper given that the motion for summary judgment did not address the affirmative defenses he raised in his answer to Almarez's complaint. We question the merit of this argument in light of *Trissell*, 2022-NMCA-001, ¶ 18, which concluded that "once the plaintiff-movant makes a prima facie case on its claim alone, *the defendant bears the burden* of demonstrating a genuine issue of material fact regarding any affirmative defense that it relies on to oppose the entry of summary judgment." (Emphasis added.) Relatedly, he challenges the district court's ruling that TRD was not a necessary and indispensable party to the action. Having reversed the grant of summary judgment in its entirety on the merits, we need not and therefore do not address Erbes' additional claims of error. *See* 5 C.J.S. *Appeal and Error* § 1126 ("The effect of a general and unqualified reversal or vacation of a judgment, order, or decree is to nullify it completely and to leave the case standing as if such judgment, order, or decree had never been rendered."); *see also State v. Hanson*, 2015-NMCA-057, ¶ 1, 348 P.3d 1070 (deeming it unnecessary to reach alternative arguments for reversal where such relief is had on the central issue in the case). The district court may decide these issues on remand, if necessary, after the parties have the opportunity to brief them.

**JANE B. YOHALEM, Judge**